In re CASHMAN.

(District Court, S. D. New York. July 17, 1900.)

1. BANKRUPTCY—DISCHARGE OF BANKRUPT—CONCEALMENT OF ASSETS.

Where, after allowing a bankrupt every possible credit, his schedule of assets shows a shrinkage in his property of from ten to thirteen thousand dollars in nine months, which is unaccounted for, the presumption of fraudulent concealment of assets will prevent his receiving a discharge in bankruptcy.

2. SAME—FAILURE TO KEEP BOOKS OF ACCOUNT.

Where a considerable shrinkage of assets within a short period is accompanied by the bankrupt's failure to keep a book of entries or any cash book, and an alleged payment of $6,000 borrowed money shortly before his failure is not entered in any book, and the account given thereof by the bankrupt is so dubious and imperfect as to be insufficient as a substitute for book entries, the inference is warranted that the failure to keep books was with the intent on the part of the bankrupt to conceal his money and prevent the true state of his business being shown.

In Bankruptcy.

Nathan, Leventritt & Perham, for bankrupt.

Black, Olcott, Gruber & Bonynge, for opposing creditors.

BROWN, District Judge. The referee gives no explanation of the evidence justifying his conclusion in favor of the bankrupt's discharge. The case is one of presumptive fraud and concealment of assets from the bankrupt's own statements. Deducting $5,019.70 of accounts, which presumably include all his old bad debts, there remains over $29,000 shrinkage in assets in nine months to be accounted for. The bankrupt's accounting for it is most lame and impotent, beyond $15,000 or possibly $20,000, allowing for evident exaggerations and mere general statements under the lead of counsel to which little credit can be given. Even allowing $3,000 loss by fire over insurance received, $6,000 on goods replevied, and those sold on execution, $2,500 more on machinery, and $5,000 for living expenses and loss by his salesmen

(this latter not very credible), and not reckoning profits, which the bankrupt says were something, there would still be a deficiency of from $10,000 to $13,000. The credits claimed by his counsel for amounts paid to business and confidential creditors, cannot be reckoned in this statement, since, if reckoned as a credit, they must be added to the debit side, requiring added explanation; if those notes represent money or goods, they are so much added means to be accounted for.

This large deficiency in accounting for assets is, as usual, accompanied by a failure of book entries to justify the bankrupt's explanation. He says he paid about $6,000 borrowed money shortly before his failure, taking up notes therefor. Nothing of this is entered in any books. He says he kept no cash book; and the testimony he gives as to the persons whom he thus paid, their addresses and the amounts paid them, is so dubious and imperfect as to be insufficient as a substitute for the book entries which the law contemplates should be made. The only rational inference is that of intent to conceal the bankrupt's money and to prevent the books showing the true state of his business; and on both grounds the discharge should be denied.