In re Brett C. MUSCATELL, Debtor.

**BARNETT BANK OF TAMPA, N.A., Plaintiff,**

v.

**Brett C. MUSCATELL, Defendant.**

**Bankruptcy No. 88–2760–8P7.
Adv. No. 88–152.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 9, 1990.

See also, Bkrtcy., 94 B.R. 774.

William Knight Zewadski, Patricia J. O'Doran, Tampa, Fla., for plaintiff.

Richard S. Agster, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 case and the matter under consideration is a three-count Complaint Objecting to the Discharge of the Debtor filed by Barnett Bank of Tampa, N.A. (Barnett). At the final evidentiary hearing, Barnett elected not to proceed forward with the claim set forth in Count I, in which it sought denial of the Debtor's discharge pursuant to § 727(a)(2) of the Bankruptcy Code. The claim in Count II of the Complaint seeks denial of the Debtor's discharge pursuant to § 727(a)(5) by alleging that the Debtor failed to adequately explain the loss of assets to meet his liabilities particularly the disappearance of assets shown on the Debtor's 1986 financial statements. The claim in Count III, based on Barnett's contention that the Debtor knowingly and fraudulently committed a false oath in connection with his bankruptcy case by failing to disclose on his Statement of Financial Affairs, transfers of certain of his assets, therefore, the Debtor is not entitled to the overall protection of the general bankruptcy discharge pursuant to § 727(a)(4) of the Bankruptcy Code.

The facts which are relevant and germane to disposition of the issues as established at the final evidentiary hearing are as follows:

On March 31, 1986, the Debtor delivered a signed Statement of Financial Position [sic] to Barnett, which indicated total assets of $7.5 million, liabilities of approximately $4 million and a net worth of $3.5 million. (Plaintiff's Exh. No. 1). On February 5, 1988, almost two years later when the Debtor filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code, his Statement of Financial Affairs failed to disclose several transfers of properties and failed to disclose several of his assets on his schedule of assets. Each time Barnett discovered some of these omissions during discovery conducted in this adversary proceeding, the Debtor amended his Statement of Affairs and Schedules. In total, the Debtor amended his Statements and Schedules four times: on February 29, 1988; July 21, 1988; January 6, 1989; and September 20, 1989, to include numerous additional transfers which were not disclosed on the initial Statement of Financial Affairs. (Plaintiff's Exh. Nos. 4–7). A summary of the omissions is contained in Plaintiff's Exh. No. 35, and includes 31 assets and transfers of assets, including several checking accounts, certificates of deposit, transfers of ownership, interest in certain businesses and in numerous parcels of real estate, as well as dividend income, commissions and numerous parcels of real estate which were received or transferred by him none of which were originally disclosed on his Statement of Financial Affairs. Additionally, nine omissions of real property transfers were also established by Barnett at the final evidentiary hearing, none of which were ever disclosed by the amendments. At the conclusion of the trial, this Court granted the Plaintiff's Motion to conform the pleadings to the evidence pursuant to Rule 15(b), Fed.R.Civ.P. covering the omissions.

Based on the foregoing facts, it is the Plaintiff's contention by virtue of § 727(a)(4) the Debtor is not entitled to a discharge because he has committed a false oath in bankruptcy.

It has been established even prior to the adoption of the Bankruptcy Code that the provisions dealing with discharge of debtors must be generally construed liberally in favor of the debtor and strictly against the creditors. It is equally true, however, that Congress meant to grant a discharge only to the honest debtors and that the discharge provisions should be liberally applied to protect the debtor only where there was no intent to violate the provisions of the law dealing with discharge. *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *Northern*

*Trust Co. v. Garman (In the Matter of Garman)*, 625 F.2d 755 (7th Cir.1980). At the trial on the complaint of objection to discharge, the plaintiff has the burden of proving the objection, Bankruptcy Rule 4005. *In re Bernstein*, 78 B.R. 619 (Bankr. S.D.Fla.1987) and the quality of proof must be proven with clear and convincing evidence and not merely the preponderance of evidence. *In re Greenwalt*, 48 B.R. 804 (Bankr.D.Colo.1985). Thus, if the evidence is in equilibrium, that is equally consistent with the claim asserted by the objecting party charging the actionable conduct and with the conduct of innocence or honest intent of a debtor, the proof failed and the discharge must be granted.

■ The debtor may be denied a discharge when he knowingly and fraudulently makes a false oath in connection with the bankruptcy case pursuant to § 727(a)(4) of the Bankruptcy Code. The purpose of this Section is to provide the trustee and creditors with reliable information. *In re MacDonald*, 50 B.R. 255 (Bankr.D.Mass. 1985). The Statement of Financial Affairs serves the important purpose of insuring that adequate information is available for those interested in the administration of the bankruptcy estate without the need for examinations or investigation to determine whether the information provided is true. Even if the undisclosed assets are worthless or unavailable to creditors, the debtor has an obligation to make full disclosure. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616 (11th Cir.1984). However, the discharge may not be denied when the untruth was the result of mere mistake or inadvertence. Rather, the false statement must be made intentionally or in a manner evidencing a reckless and cavalier disregard for the truth with regard to a matter material to the case. *In re Ellingson*, 63 B.R. 271 (Bankr.N.D.Iowa 1986).

When a debtor signs a Statement of Financial Affairs, he certifies that all answers set forth in the statement are true. The veracity of the Debtor's statements is essential to the successful administration of the Bankruptcy Code. *In re Watkins*, 84 B.R. 246, 250 (Bankr.S.D.Fla.1988);

*Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330 (2d Cir.1969); *Chalik v. Moorefield, supra.*

■ In the present case, there is no doubt that the Debtor omitted numerous transfers from his Statement of Financial Affairs and assets and from each of his four amendments to his schedules. The Debtor's omissions include over $80,000 disability income, four separate bank accounts, two separate certificates of deposit, two different safe deposit boxes and at least 18 transfers of real property within the year preceding the filing of the Chapter 7 Petition, all of which were not disclosed in the original Statement of Financial Affairs. It is conceivable that one or two omissions may be accepted as an honest oversight. However, it is inconceivable that the Debtor's 40 omissions in this case and the Debtor's failure to cure these omissions in his four amendments could be acceptable as mere mistakes or inadvertence or oversight. Even though the Debtor came forward with disclosure of many of the assets through amendments to his Statement of Financial Affairs, this does not cure his failure to originally schedule such assets voluntarily as is required by the Bankruptcy Code.

For example, the Debtor failed to list two joint bank accounts on his Statement of Financial Affairs. In defense he contends that the omission was based on advice of counsel who told him that since they were held as tenancy by the entirety with his wife they were not part of his bankruptcy estate and was not required to be disclosed. Question 4a on the Statement of Financial Affairs clearly calls for a listing of all accounts "maintained alone or together with any other person". This obviously calls for the disclosure of all accounts held jointly by the Debtor with another person as tenant by the entireties. In addition, the Debtor failed to list a jointly held certificates of deposit for similar reasons. In order for the Debtor to rely on the defense that he failed to list certain transactions on the advice of counsel, it must be established that the reliance occurred in fact and that the reliance was in good faith. *In re*

*Montgomery*, 86 B.R. 948 (Bankr.N.D.Ind. 1988). For instance, advice of counsel to the effect that property which the bankrupt undoubtedly owned was not required to be scheduled was not an acceptable defense for failure to schedule the property since such advice related to a plain, palpable and transparent fact. *Matter of Perel*, 51 F.2d 506 (S.D.Tex.1931); *In re Stoddart*, 114 F. 486 (D.C.Wash.1902); *Sinclair v. Butt*, 284 F. 568 (C.A.C.Colo.1922); *Matter of Breitling*, 133 F. 146 (C.A.7 Ill.1904).

The Eighth Circuit in the case of *Sinclair v. Butt, supra,* considered the defense to a claim of non-dischargeability that the omission by the Debtor was on advice of counsel. In this case, the Debtor admitted to making a false oath in conjunction with his bankruptcy case and claimed that he spoke with his attorney regarding the schedules and his attorney told him that assets with minimal value are not required to be scheduled. The Court of Appeals in upholding the Order Denying Discharge stated first that the Debtor is held to intend the natural consequences of his acts; second, the requirements of the statute are clear and plain and, third, the Debtor was not warranted to rely on advice of counsel concerning plain and transparent facts. See also, *In re Scher*, 21 F.Supp. 441 (D.C.N.Y.1937).

Considering the fact that the Statement of Financial Affairs plainly and clearly asks for accounts or certificates of deposit maintained "alone or together with any other person", any reliance on the advice of counsel is clearly unreasonable even if one accepts the proposition that any attorney with even a minimum degree of competence would give such legal advice. The inference that these repeated omissions were intentional is further strengthened by the fact that the Debtor is a sophisticated and experienced businessman. He holds both a Florida real estate brokerage license and a mortgage brokerage license and has been actively engaged in real estate transactions for his own account, and as a broker for others handling millions of dollars in these transactions. The Debtor completed courses required to receive a NASD license for selling real estate, oil and gas limited partnerships and has attended various continuing education seminars in the area of commercial and investment real estate. Furthermore, before becoming involved in the real estate business, he managed three car dealerships. The Debtor's contention that he is naive and an unsophisticated individual who is unable to understand the meaning of questions on the Statement of Financial Affairs stated in plain English flies in the face of common sense and the every-day experience of any one with even a minimum of business savvy and experience. In the case of *In re Kessler*, 51 B.R. 895 (Bankr.D.Kan.1985), the Court rejected the Debtor's explanation that he failed to list a bank account because of his ignorance in completing the forms. The Court observed that the Debtor was an intelligent man who knew enough to list another account which he no longer used, thus the Court is satisfied that he must have understood that he was required to list an account which was currently used by him.

The Debtor contends that certain omissions were disclosed at the § 341 meeting of creditors. However, whether or not such omissions were disclosed at the § 341 meeting is of no consequence. It is well established that the Debtor may not hide behind the "invisible cloak of disclosure" by alleging that, although the required information was not listed on the appropriate schedules, the assets were revealed to the Trustee at the § 341 meeting of creditors. Sound policy considerations mandate that the requirement to list all assets and liabilities is an absolute obligation of those seeking discharge of their debts through bankruptcy. Any other result would put the Debtor in the position of determining which assets are worthy of disclosure and which are not. The creditors are entitled to judge for themselves what will be of benefit and what will prejudice them. The veracity of the debtor's statements is essential to the successful administration of the Bankruptcy Code. *In re Watkins, supra,* at 246–50; *Diorio v. Kreisler–Borg Construction Co., supra,* at 1330; *Chalik v. Moorefield (In re Chalik), supra,* at 616.

The Debtor also contends that at least nine other omissions were the result of inadvertence on his part. These "inadvertent omissions" included the sale of five pieces of property, two bank accounts, one certificate of deposit and the sale of $10,000 of stock. Furthermore, the Debtor testified that the safe deposit box which he maintained with his mother, which was not listed on his Statement of Financial Affairs, was only used by her. However, documentation indicates that he entered the safe deposit box on 19 separate occasions. Her testimony was not offered, nor was her failure to testify explained. Section 12b of the Statement of Financial Affairs requires the Debtor to list transfers of real or personal property within the year immediately preceding the filing of the bankruptcy Petition.

The claim in Count II of the Complaint is based upon § 727(a)(5) due to a failure to satisfactorily account for substantial change in his financial position. In the present case, the Debtor's reported assets decreased by over $2 million between the date of his last reported financial statement on March 31, 1986, and the date of filing of the Chapter 7 Petition on February 5, 1988. The Debtor contends that his cash flow analysis explains the loss of such assets. Although the Debtor has provided the Court only scant documentation as to his claimed loss of assets, the Debtor under oath explained to the Court the diminution of assets from 1986 through the date of the filing of the Debtor's Petition. In fact, the Debtor's explanations actually overexplained the loss by approximately $425,000. However, since it is clear that the Debtor's discharge should be denied pursuant to Count III of Barnett's Complaint, it is unnecessary to consider at great length the allegations of Count II. The record fails to establish that Barnett has not met its burden of proof with respect to Count II and, therefore, it is appropriate to find in favor of the Defendant with respect to that Count.

Based on the foregoing, it is clear that Barnett has met its burden of proof with respect to the claims set forth in Count III of the Complaint and that the Debtor's discharge should be denied pursuant to § 727(a)(4)(A) of the Bankruptcy Code due to the commission of false oath, intentional and knowing omissions from his Statement of Financial Affairs the transfers and omission of assets in his Schedules.

A separate Final Judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.