In re James K. GARDNER, Debtor.

United States Trustee, Plaintiff

v.

James K. Gardner, Defendant.

Bankruptcy No. 9:04–BK–21004–ALP.
Adversary No. 05–181.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

March 8, 2006.

Phillip J. Jones, Wilkins, Frohlich, Jones, et al., Port Charlotte, FL, for Debtor.

Benjamin E. Lambers, Tampa, FL, for Plaintiff.

Richard Johnston, Jr., Kiesel Hughes & Johnston, Fort Myers, FL, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 liquidation case is the challenge by Felicia S. Turner, United States Trustee for Region 21 (U.S.Trustee) of the right of James K. Gardner (the Debtor) to the benefits of a general bankruptcy discharge. The Complaint Objecting to Discharge filed by the U.S. Trustee sets forth two claims in two separate counts.

In Count I of the Complaint, the U.S. Trustee alleges that the Debtor knowingly and fraudulently made a False Oath in his Schedules filed in this case and in the Statement of Financial Affairs noting the following omissions:

(a) the Debtor in his original Schedule I stated he had worked for fours years at Charlotte County Lincoln Mercury, but had no income;

(b) the Debtor in question 1 of the original Statement of Financial Affairs stated that he had no income from January 1, 2002 through October 28, 2004;

(c) the Debtor failed to disclose in questions 7 and 10 of the original and Amended Statement of Financial Affairs the gifts and transfers to his wife, Maureen Gardner (Mrs. Gardner) in the form of—

(1) Payments on notes payable by Mrs. Gardner, secured by property titled in the name of Mrs. Gardner;

(2) Payments toward the maintenance of property of Mrs. Gardner;

(3) Gifts to Mrs. Gardner; and

(4) Deposits of his personal payroll checks into an account he owns jointly with Mrs. Gardner at Charlotte State Bank; and

(d) the Debtor failed to disclose his interest in Carson City Car & Truck Center, Inc. in item 18 of the original and Amended Statement of Financial Affairs.

Based on the foregoing, the U.S. Trustee demands the entry of a judgment denying the Debtor's discharge.

In Count II of the Complaint the U.S. Trustee alleges that the Debtor within one year of the commencement of the case made several of the following payments to his wife, Mrs. Gardner, or on her behalf.

(1) Payments on notes secured by the property solely owed by Mrs. Gardner;

(2) Payments for the maintenance of the same property owed by Mrs. Gardner;

(3) Made several unspecified gifts to Mrs. Gardner; and

(4) Deposited his payroll checks into a joint account held by the Debtor and his wife, Mrs. Gardner at Charlotte State Bank.

It is the U.S. Trustee's contention that these payments were made with specific intent to hinder, delay or defraud unsecured creditors and, therefore, the Debtor is not entitled to the protection of a general bankruptcy discharge pursuant to 11 U.S.C. § 727(a)(4)(A)—(Count I) or in the alternative not entitled to a discharge pursuant to 11 U.S.C. § 727(a)(2)(A)—(Count II).

The facts relevant to the resolution of the two claims as established at the final evidentiary hearing are as follows. Prior to 2000 the Debtor was the president, secretary, and treasurer of a corporation named Carson City & Truck Center, Inc., in Carson City, Nevada. Sometime in 2002 the Debtor moved to the State of Florida and obtained employment with a Lincoln Mercury Dealership (Lincoln Mercury) located in Charlotte County, Florida. On January 31, 2003, the Debtor and his wife purchased the Debtor's current residence located in Charlotte County, Florida. The purchase of the family home was financed and the promissory note and the mortgage were signed by both the Debtor and Mrs. Gardner—however, the deed was recorded solely in the name of Mrs. Gardner. The down payment for the purchase of the residence came from the proceeds of a sale of Mrs. Gardner's residence of which she owned prior to her marriage to the Debtor.

On September 26, 2003, Mrs. Gardner obtained a loan from the First Florida Bank, NA in the amount of $344,350.00. The loan was secured by a mortgage granted to First Florida Bank, NA, replacing the previous mortgage held by William D. Ivey and Evelyn A. Ivey. Some part of the loan obtained by First Florida Bank, NA was used to pay for the improvements to the residence.

On August 31, 2004, Mrs. Gardner purchased a 2004 Lincoln Navigator, which was financed requiring a monthly payment in the amount of $719.06. On September 2004, Mrs. Gardner purchased a 27-foot angler boat requiring monthly payments in the amount of $500.00. On September 30, 2004, Mrs. Gardner purchased a second 2004 Lincoln Navigator requiring payments in the amount of $765.50 per month.

Sometime before October 28, 2004, the Debtor retained Phillip J. Jones (Mr. Jones) for the purpose of assisting him and requiring service to represent him as a Debtor in a Chapter 7 case. It appears that there was some unspecified emergency, which required the immediate protection of the automatic stay imposed by 11 U.S.C. § 362(a). On October 28, 2004, Mr. Jones, filed the Debtor's bare Petition without the documents required by 11 U.S.C. 521(a) and F.R.B.P. 1007. On November 1, 2004, the Clerk of the Court issued a Notice of Commencement of Case and scheduled the Section 341(a) meeting to be held on December 1, 2004. On November 2, 2004, this Court issued a Notice of Deficient Filing, indicating that the Debtor failed to file Summary of Schedules, Schedules A–J, Statement of Financial Affairs, and Statement of Intentions (Doc No. 4).

On November 5, 2004, the Debtor filed his Schedules A–J, Statement of Intentions, and his Statement of Financial Affairs (Doc. Nos. 7, 8 and 9). On Schedule I, the Statement of Income, the Debtor stated that he worked for four years at Lincoln Mercury but failed to state the amount that he had received. In fact, the Debtor's Statement of Financial Affairs failed to state what income, if any, he had received between January 1, 2002 through October 28, 2004. On Schedule J, the Schedule of Expenses, the Debtor failed to state what expenses, if any, he paid during the relevant time.

As previously noted, the Section 341 Meeting of Creditors was scheduled for December 1, 2004. Because of the incompleteness of the Schedules and the Statement of Financial Affairs, Mr. Jones requested a continuance of the Section 341 Meeting in order to enable him to cure the deficiencies. On December 3, 2004, the Debtor executed Amended Schedules and Statement of Financial Affairs, which were filed on December 6, 2004.

According to the Debtor's Amended Schedule I he had a gross monthly income of $13,098.27 or $157,174.24 annually and his wife had gross income of $2,500.00 per month or $30,000 per year. The Amended Schedule I also indicated that the Debtor and his wife had a combined net monthly income of $10,022.07. According to the Schedule of Expense for the Debtor's household, the Debtor's expenses were $7,390.00 leaving a monthly disposable income of $2,630.07.

The Debtor in his Amended Statement of Financial Affairs stated that he earned $100,846.00 in 2002; $140,048.00 in 2003; and $120,000.00 to date in 2004. However, as of December 11, 2004, the Debtor earned $150,920.40. In addition to the above, the Debtor at all times supplied more than half of the support for his wife, his two children and also for his wife's child.

The Debtor stated in his Amended Statement of Financial Affairs that he earned $100,846.00 in 2002; $140,048.00 in 2003; and $120,000.00 to date in 2004—however, as of December 11, 2004, he earned $150,920.40. Although the evidence is not clear, it appears that the Debtor's paychecks were deposited in a joint checking account maintained by the Debtor and his wife, which was used to make payments on the mortgage of the family residence owned by Mrs. Gardner. All payments on the two vehicles and the boat, which are also owned by Mrs. Gardner, were also made from funds deposited in the joint checking account. While it is possible that Mrs. Gardner's paychecks were also deposited in the joint account, it is fair to infer that the Debtor's funds were used to make the mortgage payments on the house and the note payments concerning the two vehicles and the boat.

This Court is satisfied that the Debtor's funds were used, at least in part, to pay for the vehicles, boat and residence.

### Count I—11 U.S.C. § 727(a)(4)(A)— False Oath

■ It is well established that the provisions of the discharge were designed to assist a financially distressed debtor to receive a fresh start in life unencumbered from the financial burdens of the debtor's past. *Lines v. Frederick,* 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970). Thus, these provisions of the Code should be construed in favor of the debtor, and strictly against the one who challenges the debtor's right to discharge. *In re Muscatell,* 113 B.R. 72 (Bankr.M.D.Fla.1990).

■ It is equally true that the benefits of the discharge are reserved for honest debtors. A debtor who comes to the bankruptcy court must come clean, make full disclosure of all information relevant to the administration, and must fully cooperate with the trustee. *Kentile Floors, Inc. v. Winham,* 440 F.2d 1128 (9th Cir.1971); *In the Matter of Garman,* 643 F.2d 1252 (7th Cir.1980). It is not for the debtor to decide what is and is not relevant. A debtor who intentionally omits important information and fails to make full disclosure to the court, places the right to the discharge in serious jeopardy. The veracity of a debtor's Statement is absolutely essential to the successful administration of the Bankruptcy Code. *Diorio v. Kreisler–Borg Construction Co.,* 407 F.2d 1330 (2nd Cir.1969); *In re Chalik,* 748 F.2d 616 (11th Cir.1984). It is true that a discharge should not be denied when the omissions were due to mere mistake or inadvertence. *In re Ellingson,* 63 B.R. 271 (Bankr. N.D.Iowa 1986).

■ While the burden of proof is on the party challenging a debtor's right to the benefits of the general discharge, the standard of proof is no longer the clear and convincing evidence but a mere preponderance is sufficient to prevail on the objections. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)(dicta); *In re Scott,* 172 F.3d 959 (7th Cir.1999); *In re Brown,* 108 F.3d 1290 (10th Cir.1997); *In re Adams,* 31 F.3d 389 (6th Cir.1994), cert. denied. 513 U.S. 1111, 115 S.Ct. 903, 130 L.Ed.2d 786 (U.S.1995).

■ In order to establish a viable of False Oath, the challenging party must prove two elements. First, the debtor's oath must have been made knowingly and fraudulently. Second, the oath must be related to a material fact. *In re Latorre,* 164 B.R. 692, 695 (Bankr.M.D.Fla.1994); *In re Ingersoll,* 124 B.R. 116 (M.D.Fla. 1991).

There is no question that the initial filing was devoid of any of the required information, most notably, the earnings of the Debtor during the relevant years. The fact that Schedule J was in blank does not warrant the inference that it was an affirmative denial that the Debtor in fact did not have income in the relevant years. The deficient filing was no doubt attributable of the attorney's haste to file the Petition and certainly not attributed to the Debtor's intention to knowingly make a false statement that he had no income. This Court is satisfied that the same comments are equally applicable to Schedule I, which was also filed in blank.

■ While it is true that, the original information furnished by the Debtor was untrue and might be sufficient to support the claim of false oath, it is contended that the amendment cured the initial defects. It is well established that if the original information is tainted and would be a sufficient bases to find false oath a subsequent amendment would not cleanse the initial taint. Moreover, the Debtor's amendments equally failed to disclose what inter-

est, if any, he has in Carson City Car & Truck Center, Inc., and the fact of the matter is, that he failed to disclose that he had been engaged in the business when he answered question 18 of the Financial Statement of Affairs. This record leaves no doubt that the Debtor was less than candid and certainly did not furnish a full and honest disclosure of the information relevant for the administration of his estate. It is evident from the foregoing, that the Debtor did not come to this Court with a candor and an intention to make full disclosures of all the information relevant to the administration to this estate.

In addition, the U.S. Trustee charges that the Debtor committed False Oath in his original and Amended Statement of Financial Affairs by failing to disclose the gifts and transfers to his wife and his interest in Carson City Car & Truck Center, Inc. These so-called gifts include payments by the Debtor on the note, which was secured by the family residence that was owned solely by the Debtor's wife.

 It is clear to this Court that the Debtor's failure to disclose his interest in Carson City Car & Truck Center, Inc. in the original and in the Amended Statement of Financial Affairs were made knowingly and the Debtor knew, or should have know that the information that he failed to furnish was tantamount to false statement under oath and was material to his case. These omissions were both knowingly false and material to the case. In sum, for the reasons stated, this Court is satisfied that Count I of the U.S. Trustee's Objection to Discharge is well-taken and will be sustained.

### Count II—11 U.S.C. § 727(a)(2)(A)— Fraudulent Transfer

 The second basis urged by the Trustee to deny discharge is based on Section 727(a)(2)(A) of the Bankruptcy Code. The factual basis of this claim is the Trustee's allegation that the Debtor transferred property within one year preceding the commencement of the case with the specific *intent* to hinder, delay or defraud creditors (emphasis supplied). The alleged transfer was the deposit into the Debtor's joint checking account, a common practice between married couples and certainly a fraudulent transfer. The fact that the funds in the joint account were used to pay for properties owned by Mrs. Gardner could no doubt be the basis for a claim to establish that the properties acquired by Mrs. Gardner, paid for by the Debtor are in fact the properties of the Debtor and, therefore, would technically be subject to administration in a Chapter 7 case. However, this is not the matter before this Court, and the claim asserted in Count II, the fraudulent transfer claim must be viewed within the framework for the ground to deny the discharge. There is no evidence in this record, that, even assuming there was a transfer from the Debtor to Mrs. Gardner, there was a specific intent to hinder, delay or defraud the creditors. This record is devoid of any evidence that the Debtor was being sued, faced imminent entry of a judgment, or loss of any assets which prompted the transfer which was done for the purpose of hindering, delaying or defrauding or protecting himself from creditors.

Based on the foregoing, this Court is satisfied that the U.S. Trustee met its burden to establish Count I of its Complaint regarding False Oath by a preponderance of the evidence and, therefore, Count I is sustained. The U.S. Trustee failed to carry its burden as to Count II for Fraudulent Transfer, and, therefore, Count II is overruled. This being the case, the Debtor's discharge is denied.

A separate final judgment shall be entered in accordance with the foregoing.

*FINAL JUDGMENT*

THIS CAUSE came on for consideration upon the Court's own Motion for the purpose of entering a Final Judgment in the above-captioned adversary proceeding. The Court has considered the record and finds that this Court has entered Findings of Fact, Conclusions of Law and Memorandum Opinion. Therefore, there is no reason why a final judgment should not be entered on the findings.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Final Judgment be, and the same is hereby, entered in favor of the Plaintiff, the United States Trustee and against the Defendant, James K. Gardner with respect to Count I of the U.S. Trustee's Complaint Objecting to Discharge pursuant to 11 U.S.C. § 727(a)(4)(A), and the discharge of the Debtor, James K. Gardner is denied. It is further

ORDERED, ADJUDGED AND DE-CREED that Final Judgment be, and the same is hereby entered in favor of the Defendant, James K. Gardner against the Plaintiff, the United States Trustee with respect to Count II of the Unites States Trustee's Complaint Objecting to Discharge pursuant to 11 U.S.C. § 727(a)(2)(A). It is further

ORDERED, ADJUDGED AND DE-CREED that the Complaint Objecting to Discharge be, and the same is hereby dismissed with prejudice.